# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer M. Sansone, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>Charter Communications, Inc., et al.,<br><br>         Defendants. | Case No.: 17-cv-01880-WQH-JLB<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF No. 49]** |

Before the Court is Plaintiff Jennifer M. Sansone's ("Plaintiff") Motion to Compel (ECF No. 49). Plaintiff seeks to compel Defendants Charter Communications, Inc. ("Charter Inc.") and Charter Communications, LLC ("Charter LLC") to produce responses to Interrogatories Nos. 1, 3, 5, and 7 (Set One) and Defendant TWC Administration LLC ("TWC") to produce responses to Interrogatories Nos. 1, 3, and 5 (Set One). These interrogatories collectively request putative class contact information from Defendants. For the reasons discussed below, Plaintiff's Motion to Compel (ECF No. 49) is **GRANTED in part and DENIED in part**.

///

///

///

## I. BACKGROUND

### A. Factual Background

Plaintiff was a TWC employee from around May 19, 2010, to May 18, 2016, and an employee of Charter[1] from around May 18, 2016, to the present. (ECF No. 19 ¶ 3.) Plaintiff Baldemar Orduno, Jr., ("Plaintiff Orduno") was a TWC employee from around April 14, 2011, to May 18, 2016, and an employee of Charter from around May 18, 2016, to the present. (*Id.* ¶ 4.) Around May 18, 2016, Charter Inc. acquired Time Warner and all of its subsidiaries, including TWC. (*Id.* ¶ 22.)

Plaintiffs bring this putative class action against Charter Inc., Charter LLC, and TWC alleging that on the date of Charter Inc.'s acquisition of Time Warner, their employment, and the putative class members' employment, with TWC was terminated. (*Id.* ¶ 24.) Plaintiffs allege that after their termination with TWC, Plaintiffs' and other Vacation Pay[2] class members' accrued and unused vacation wages were transferred to Charter LLC, as opposed to paid out, in violation of California law. (*Id.* ¶¶ 25–26.) Plaintiffs further allege that after TWC and Charter transferred their vacation wages, Charter LLC unilaterally reduced the value of the wages, also in violation of California law. (*Id.* ¶ 27.)

Plaintiff Orduno also alleges that Charter LLC breached an express promise made by TWC to its employees that TWC employees would not have their base salaries reduced during the twelve-month period following Charter Inc.'s acquisition of TWC. (*Id.* ¶¶ 28–34.) Plaintiff Orduno contends that his and other Base Salary[3] subclass members' salaries

---

[1] References to "Charter" mean both Charter Inc. and Charter LLC.

[2] The Vacation Pay class is comprised of and defined as: "Any and all persons who were employed by TWC Administration LLC in the state of California whose employment with TWC Administration LLC was transitioned to Charter Communications, LLC without being paid out the vacation wages they had accrued at TWC Administration LLC." (ECF No. 19 ¶ 15.)

[3] The Base Salary subclass is comprised of and defined as:
> Any and all persons who were employed by TWC Administration LLC in the state of California on the date Time Warner Cable, Inc. was acquired by Charter Communications, Inc. and whose employment was transitioned to

were reduced during the twelve-month period after the acquisition date, in violation TWC's express promise. (*Id.* ¶¶ 28–32.)

Finally, Plaintiffs allege that Charter LLC refused to pay them and other Commissions[4] subclass members bonuses or commissions wages under the applicable bonus or commission plans. (*Id.* ¶ 35.) Specifically, Plaintiffs allege that Charter LLC "unilaterally and retroactively reduced the commissions to be paid, and credit to be applied to sales for use in determining sales-related bonuses, for Complex Coax products." (*Id.* ¶ 38.)

### B. Background Relating to Discovery Dispute

The instant discovery dispute concerns whether Defendants must produce, prior to class certification, the names and contact information for members of the Vacation Pay class and the Base Pay and Commissions subclasses. (ECF No. 49 at 2.) The parties also dispute whether Defendants must produce the names and contact information for the putative class members Defendants allege are subject to an arbitration provision for the claims at issue. (*Id.*)

The parties telephonically met and conferred regarding the instant discovery dispute, and several other discovery disputes, on September 18, 2018, and September 21, 2018. (ECF No. 49-1 ¶ 4.) Unable to resolve all of their disputes, the parties filed a joint motion

---

> Charter Communications, LLC and had their base salary reduced on or before the one[-]year anniversary date of Charter Communications, Inc.'s acquisition of Time Warner Cable, Inc.

(ECF No. 19 ¶ 16.)

[4] The Commissions subclass is comprised of and defined as:
> Any and all persons who were employed by Charter Communications, LLC in the state of California and were subject to the Charter Communications Spectrum Enterprise Sales Commission Plan for Strategic Sales Account Executives and Account Managers and/or the Charter Communications Spectrum Enterprise Sales Commission Plan for Mid-Market and Strategic Sales Managers and Directors at any time from December 19, 2016 through the present and had their commission wages for Complex Coax product sales reduced.

(ECF No. 19 ¶ 17.)

3

on September 21, 2018, to extend their meet and confer deadline by twenty days. (ECF No. 41.) The Court granted the parties' joint motion on September 25, 2018, extending the meet and confer deadline to October 26, 2018. (ECF No. 42.)

On October 17, 2018, the parties left a joint voicemail with the Court requesting the Court's assistance in resolving three different discovery disputes, including the instant dispute. (*See* ECF No. 43.) The Court then set a telephonic, counsel-only Discovery Conference with the parties for October 23, 2018. (*Id.*) During the Conference, Plaintiffs argued that they are entitled to putative class member contact information precertification because Defendants had represented that they planned to submit, with their opposition to class certification, class member declarations containing statements that some class members consented to having their vacation time transferred. The Court then discussed with the parties, with respect to the instant dispute, whether a sampling of names and contact information for the Vacation Pay class members may be the appropriate resolution. The Court then directed the parties to meet and confer on what sampling percentage might be appropriate, and if a resolution could not be found, to request a briefing schedule from the Court. (*See* ECF No. 44.)

After the Discovery Conference, Plaintiffs proposed a 30% sampling of the Vacation Pay class members' contact information to Defendants. (ECF No. 49-1 ¶ 9.) Defendants rejected this proposal and countered with an offer to "not argue in opposition to a motion for class certification that determining whether and which putative class members provided written consent to have their vacation time transferred between [Charter LLC] and [TWC] is an individualized issue rendering class treatment inappropriate." (*Id.* ¶ 11.)

In response to Defendants' counteroffer, Plaintiffs proposed either a 30% sampling of the Vacation Pay class members' contact information or an agreement that Defendants would not use "declarations from class members in opposition to class certification and that they would not be making arguments in opposition to class certification to which the class may have information helpful to rebut their arguments." (*Id.* ¶ 12.) Defendants rejected Plaintiffs' second proposal and indicated that "they would not agree to limit their

4

1 ability to submit declarations in opposition to class certification and would not agree to a sampling." (*Id.* ¶ 14.)

Unable to agree upon what amount of sampling would be appropriate, or even whether sampling is the appropriate resolution, the parties left a joint voicemail with the Court on October 26, 2018, requesting a briefing schedule. (ECF No. 45.)

On November 12, 2018, Plaintiff filed the instant Motion to Compel. (ECF No. 49.) Defendants filed a response in opposition on November 26, 2018. (ECF No. 51.) Plaintiff filed a reply on December 3, 2018. (ECF No. 53.)

## II. DISCUSSION

### A. Legal Standards

#### 1. <u>Scope of Discovery</u>

Nonprivileged information is discoverable under Federal Rule of Civil Procedure 26 if it is (1) relevant, and (2) proportional to the needs of the case. Rule 26(b)(1) provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 33 further provides that a party may serve up to twenty-five written interrogatories on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 33(a). The propounding party may move to compel answers to interrogatories submitted under Rule 33 if the responding party fails to produce the answers requested. Fed. R. Civ. P. 37(a)(3)(B)(iii). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the

burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted) (first citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); then citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). Those opposing discovery are "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

2. <u>Precertification Discovery in Class Actions</u>

Prior to class certification under Federal Rule of Civil Procedure 23, discovery lies entirely within the discretion of the court. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975) ("Whether or not discovery will be permitted in a case of this nature lies within the sound discretion of the trial court.")). Because a court must determine whether the action may be maintained as a class action as soon as practicable after the action is filed, discovery is likely warranted precertification where it will resolve factual issues necessary for the determination of class certification. *Kamm*, 509 F.2d at 210. To deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citing *Kamm*, 509 F.2d at 210). In *Doninger*, the Ninth Circuit further addressed whether courts should allow precertification discovery:

> It is true that the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.

*Id.* (citations omitted).

///

However, before ordering precertification discovery, the court may require the plaintiff to make a prima facie showing that Rule 23(a)'s class action requirements are satisfied or to show "that discovery is likely to produce substantiation of the class allegations."[5] *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). "Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Id.* (citing *Doninger*, 564 F.2d at 1313).

**B.  Analysis**

    1.  Putative Class Member Contact Information

Here, Plaintiff seeks an order compelling Defendants Charter Inc. and Charter LLC to produce responses to Interrogatories Nos. 1, 3, and 5 and Defendant TWC to produce responses to Interrogatories Nos. 1 and 3. (ECF No. 49 at 3–4.) These interrogatories collectively request Defendants to identify and produce contact information for all of the Vacation Pay class members and all of the Base Salary and Commissions subclass members, as defined above. (ECF Nos. 49-2 at 4; 49-3 at 4; 49-4 at 4.) In her motion, Plaintiff reduces her request to a 25% random sampling of the contact information of the Vacation Pay class members (8,150 total members), but continues to request contact information for all of the Base Salary subclass members (130 class members) and the

---

[5] Although some district courts in the Ninth Circuit have required a plaintiff to make a prima facie showing under Rule 23 before allowing discovery on issues pertaining to class certification, a court has discretion whether to require a plaintiff to make this showing. *Kaminske v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("It is true that there is nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it very well may be that courts routinely do not require such a showing. However, it is clear that a court has discretion whether to require the prima facie showing that was approved of in *Doninger* and *Mantolete* before allowing discovery of the kind [p]laintiff seeks here."); *see Robinson v. Chefs' Warehouse*, No. 3:15-cv-05421-RS(KAW), 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017) ("Plaintiffs are not necessarily required to make a prima facie showing in order to obtain information for the putative class."); *Cedano v. Thrifty Payless, Inc.*, No. CV–10–237–HZ, 2011 WL 8609402, at *8 (D. Or. May 9, 2011) ("The Ninth Circuit's decision[s] in *Mantolete* and *Doninger* simply stand for the proposition that 'a court does not abuse its discretion if it decides to require a prima facie showing that class treatment is appropriate before allowing discovery on issues pertaining to class certification.'" (quoting *Kaminske*, 2010 WL 5782995, at *2)).

Commissions subclass members (undetermined number of class members). (ECF No. 49-1 ¶ 2.) Plaintiff mainly argues that class contact information is relevant because "access to members of the putative class will allow Plaintiffs to rebut Defendants' anticipated arguments that individual issues exist, or that the identified classes are not ascertainable." (ECF No. 49 at 7–8.)

Defendants in their opposition object to producing class contact information first on the grounds that Plaintiff has not demonstrated a prima facie showing that Rule 23(a)'s requirements are satisfied or that discovery is likely to substantiate the class allegations. (ECF No. 51 at 5.) Defendants further object on relevancy and proportionality grounds, arguing in sum that Plaintiff "has not demonstrated that she needs class contact information to pursue her certification theories." (*Id.* at 2.)

### *a. Prima Facie Showing Under Rule 23(a)*

Pursuant to Rule 23(a), a member of a class of individuals may sue on behalf of all class members only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Here, the Court did not require Plaintiff to demonstrate a prima facie showing of Rule 23(a)'s requirements at the outset of discovery, and Defendants did not urge the Court to do so. Nevertheless, the Court finds that Plaintiff is able to establish a prima facie case under Rule 23(a). As to the numerosity element, Plaintiff alleges that "the membership of the Classes . . . are estimated to be greater than one thousand" (ECF No. 19 ¶ 18.a.), and it is uncontested that the Vacation Pay class includes approximately 8,150 members (ECF No. 49-1 ¶ 2). As to the second element, Plaintiff sufficiently alleges that there are common

questions of law and fact as to the classes.[6] (ECF No. 19 ¶ 18.f.) With respect to typicality, Plaintiff sufficiently alleges that her and Plaintiff Orduno's claims of injury are typical of the class.[7] (*Id.* ¶ 18.b.) And finally, Plaintiff alleges that she and Plaintiff Orduno will fairly and adequately protect the interests of each class member, and nothing at this point in the litigation suggests otherwise. (*Id.* ¶ 18.c.) Accordingly, the Court finds that precertification discovery is appropriate based on Plaintiff's prima facie showing of Rule 23(a)'s requirements.

---

[6] Plaintiff alleges that the common questions of law and fact as to the classes are:
1. Whether Defendants failed to pay accrued and unused vacation wages to Plaintiffs and Vacation Pay Class Members in accordance with the timing requirements of Labor Code § 201;
2. Whether Defendants failed to pay Plaintiffs and Vacation Pay Class Members all vacation wages earned and unused at the time of their discharge from TWC;
3. Whether Defendants' conduct was willful;
4. Whether Defendants breached their contract with Plaintiff Orduno and [Base Salary] Class Members to not reduce base salaries within the 12 month period following . . . Charter Inc.'s acquisition of Time Warner;
5. Whether Defendants breached their contract with Plaintiffs and [Commissions] Class Members by reducing their commission wages and related bonuses for sales of Complex Coax products in violation of the terms of the [applicable bonuses/commissions plans];
6. Whether Defendants engaged in unfair competition in violation of California Business & Professions Code §§ 17200, *et seq.*

(ECF No. 19 ¶ 18.f.)

[7] Specifically, Plaintiff alleges that:
All members of the Vacation Pay Class have been similarly harmed by willfully being denied payout of their accrued vacation wages upon termination of their employment with TWC. All members of the [Base Salary] Class have been similarly harmed by the willful reduction of their base pay by Charter within the 12 months following Charter Inc.'s acquisition of Time Warner Cable, Inc. . . . All members of the [Commissions] Class have been similarly harmed by the willful reduction of their commission wages after their commission wages had already been earned. Further, Defendants benefitted from the same type of unfair and/or wrongful acts as to each member of the Classes.

(ECF No. 19 ¶ 18.b.)

### b. Relevance

The Court turns next to Defendants' objection as to the relevancy of class contact information. Plaintiff argues that class contact information is relevant precertification because "Defendants admit [that] they may contact class members and submit declarations in opposition to class certification," and equal access to the class will allow Plaintiffs to rebut Defendants' anticipated arguments. (ECF No. 49 at 7–8.) Plaintiff further argues that "[a]ccess to putative class members will allow Plaintiffs to confirm their theories of liability[ and] further develop evidence supporting class certification." (ECF No. 53 at 5.)

Defendants in response contend that Plaintiff has not met her burden to show that putative class contact information is relevant or proportional to the needs of the case. (ECF No. 51 at 7.) Additionally, Defendants argue that Plaintiff has not "demonstrate[d] that such information is needed to substantiate the class allegations." (*Id.* at 8.)

Concerning the contact information of the putative class members, courts in this District have found that "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys.*, No. 06-CV-01330–JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc.*, 135 Cal. Rptr. 2d 415, 428 (App. Ct. 2003)); *e.g.*, *Coleman v. Jenny Craig, Inc.*, No. 11–cv–1301–MMA (DHB), 2013 WL 2896884, at *7 (S.D. Cal. June 12, 2013). Moreover, discovery of the putative class members' contact information is routinely allowed. *See, e.g.*, *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful for plaintiff to determine, at minimum, the commonality and typicality prongs of Rule 23."); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) (recognizing that class counsel in Rule 23 class actions must be allowed to

communicate with potential class members for the purpose of information gathering, even prior to class certification).

The Court finds that Plaintiff has met her burden to show that class contact information is relevant precertification. First, as Plaintiff asserts, Plaintiff is not required to demonstrate that she *needs* class contact information or that class contact information is *necessary* to support a motion for class certification. (*See* ECF No. 53 at 2.) Instead, as Plaintiff points out, it is sufficient for Plaintiff to show that class contact information would aid in confirming Plaintiffs' theories of liability and further developing evidence in support of class certification. *See Kaminske*, 2010 WL 5782995, at *5 (finding contact information of putative class members "relevant to aid in the identification and collection of . . . potentially common evidence, as well as to test [p]laintiff's theories regarding the commonality of [d]efendant's practices"). As Plaintiff contends, "even if certification can be won and Plaintiff[s'] theories may be proven, without class member declarations, Plaintiffs have the right to speak with Class Members who can [potentially] confirm Plaintiffs' theories of certification." (ECF No. 53 at 5.)

Defendants argue that because Plaintiffs' theory of the case stems from a single transaction—the alleged termination of all employees after Charter Inc.'s acquisition of TWC—Plaintiff cannot demonstrate that "talk[ing] with individuals about potential individualized defenses that Defendants may raise . . . is needed to substantiate the class." (ECF No. 52 at 8.) As discussed by the Court during the October 23, 2018 Discovery Conference, the Court would find this position more persuasive if Defendants had not indicated both during the Conference and in their opposition to Plaintiff's Motion to Compel that they themselves might attach individual declarations in opposition to class certification. (*See id.* at 2.) Moreover, Plaintiff offered to withdraw its request for class contact information if Defendants would agree not to use individual declarations in support of their opposition to class certification, but Defendants declined this offer. (*See* ECF No. 49-1 ¶¶ 12–14.) Therefore, the Court finds that Plaintiff has met her burden to show that class contact information is relevant at this stage in the litigation. *See Salgado v. O'Lakes*,

2014 WL 7272784, at *11 (E.D. Cal. Dec. 18, 2014) ("Ultimately, 'a court maintains a wide latitude in deciding whether contact information of putative class members should be produced prior to class certification . . . .'" (quoting *York v. Starbucks Corp.*, No. CV 08–7919–GAF (PJWx), 2009 WL 3177605, at *1 (C.D. Cal. June 30, 2009))). Plaintiff is entitled to putative class members' contact information so that Plaintiffs may have the opportunity to substantiate their class allegations, or rebut Defendants' opposition to class certification, through class member declarations. *See Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13–cv–01222–TLN–AC, 2017 WL 6558133, at *2 (E.D. Cal. Dec. 22, 2017) ("Especially when the material is in the possession of the defendant, the court should allow the plaintiff enough discovery to obtain evidence as to whether a class action is maintainable.").

    *c.*  *Proportionality*

  Plaintiff argues that this Court should compel Defendants to produce a 25% random sampling of the contact information for the 8,150 Vacation Pay class members, all contact information for the 130 Base Salary subclass members, and all contact information for the unknown number of Commissions subclass members. (ECF No. 49 at 2.) Defendants argue that the production of any class contact information would be disproportional to the needs of the case. (*See* ECF No. 51 at 7.)

  The burden is on the party seeking to compel discovery to show not only relevancy of the requested discovery, but proportionally as well. *See Starkey v. Hernandez*, No.: 3:17-cv-01158-JLS-KSC, 2018 WL 6075809, at *2 (S.D. Cal. Nov. 28, 2018) ("As the moving party, plaintiff has the burden of informing the Court why the information he seeks is relevant and proportional to the needs of the case . . . ."). First, as to Plaintiff's request for a sampling of the Vacation Pay class members' contact information, the Court agrees that a sampling is appropriate. However, Plaintiff does not provide any support as to why a 25% sampling—resulting in the production of class contact information for over 2,000 Vacation Pay class members—is appropriate or proportional to the needs of this case precertification. As such, Plaintiff has not met her burden to show proportionality of a

25% sampling. The Court finds that a 10% sampling of Vacation Pay class members' contact information, resulting in the contact information for approximately 815 members, is proportional to the needs of the case precertification.[8]

Second, as to Plaintiff's request for the contact information for all 130 Base Salary subclass members, Plaintiff again does not set forth any reasoning in support of proportionality. Nevertheless, the Court finds that this request is reasonable and proportional to the needs of the case precertification.

Third, as to Plaintiff's request for the contact information for all Commissions subclass members, Plaintiff again does not set forth any reasoning in support of proportionality. Additionally, the Court cannot determine at this time whether this request is proportional to the needs of the case given that the number of class members in the Commissions subclass is currently unknown. The Court will not blindly order production of contact information for all of the Commissions subclass members without first considering the size of the subclass. Nevertheless, the Court finds that contact information for a fixed number of 150 Commissions subclass members, should this many exist, is proportional to the needs of the case precertification.

Accordingly, Plaintiff's Motion to Compel as to Interrogatories Nos. 1, 3, and 5 propounded on Defendants Charter Inc. and Charter LLC and Interrogatories Nos. 1 and 3 propounded on Defendant TWC is **GRANTED in part and DENIED in part**. On or before **February 13, 2019**, Defendants shall randomly produce the names and last known contact information for:

///

///

---

[8] The Court notes that because Defendants only argue that Plaintiff is not entitled to any class member contact information, Defendants have not provided the Court with any arguments as to what sampling size is appropriate. Additionally, Defendants do not make any undue burden objections as to the 25% sampling.

(1) 10% of the estimated 8,150 Vacation Pay class members (815 members);

(2) all of the estimated 130 Base Salary subclass members; and

(3) 150 of the Commissions subclass members, if the number of Commissions subclass members is equal to or exceeds 150. If the number of Commissions subclass members is not equal to or does not exceed 150, Defendants shall produce contact information for all of the Commissions subclass members.

Additionally, the production shall be accompanied by a signed declaration stating how the random sample was selected. If the sample proves inadequate because of the inability to locate substantial numbers of former employees, the reluctance of significant numbers of current employees to speak to Plaintiff's counsel, or any other reason, Plaintiff may apply for additional relief after meeting and conferring with Defendants' counsel.

2. Contact Information for the Class Members Allegedly Subject to Arbitration

Plaintiff also seeks an order compelling Defendants Charter Inc. and Charter LLC to produce responses to Interrogatory No. 7 and Defendant TWC to produce a response to Interrogatory No. 5. (ECF No. 49 at 4.) These interrogatories collectively request Defendants to identify and produce contact information for the 2,184 class members that Defendants "contend executed an arbitration agreement applicable to the claims brought in this action." (*Id.*; *see* ECF Nos. 49-2 at 4; 49-3 at 4; 49-4 at 4.)

Plaintiff argues that the contact information for putative class members who Defendants allege are covered by an arbitration agreement is relevant to rebut anticipated arguments from Defendants that "determining if any class members agreed to arbitrate covered claims is an individualized issue rendering class treatment inappropriate." (ECF No. 49 at 9.) Plaintiff further asserts that having access to these class members will allow Plaintiffs "to discover whether individuals actually consented to the arbitration agreement(s), how Defendants obtained consent to the arbitration agreement(s), and what Defendants told the putative Class Members was their reasoning for the arbitration agreement(s)." (ECF No. 53 at 7.) Plaintiff relies on *Adamov v. Pricewaterhouse Coopers*

1  *LLP*[9] for the proposition that "to prevent such discovery would amount to a premature
2  decision on the issue of the [arbitration] agreement's applicability." (ECF No. 49 at 9.)

3       Defendants in response argue that Plaintiff's reliance on *Adamov* is misplaced
4  because in *Adamov*, the plaintiff alleged "that defendant 'had solicited putative class
5  members with participation in an arbitration program while the case was stayed, in an effort
6  to deter class participation.'" (ECF No. 51 at 10–11 (quoting *Adamov*, 2017 WL 6558133,
7  at *3).) Defendants, however, state that in an effort to compromise they "will provide
8  Plaintiff with information regarding: (1) how the arbitration agreements were
9  communicated to employees; (2) how consent to those agreements was obtained; and (3)
10 the approximate number of individuals who transferred from [TWC] to [Charter LLC] and
11 who are subject to an arbitration agreement." (*Id.* at 11 n.1.)

12       The Court agrees with Plaintiff and finds that *Adamov* serves as persuasive authority.
13 When and why the defendant in *Adamov* created the arbitration agreement at issue is a
14 distinction without significance. The *Adamov* court did not base its decision to grant the
15 plaintiff's request for the contact information of class members allegedly subject to the
16 arbitration agreement solely because of the defendant's alleged conduct during the case's
17 stay. The *Adamov* court also found that because the parties disputed the validity and
18 effectiveness of the agreement, the plaintiff was entitled to discovery surrounding the
19 agreement. 2017 WL 6558133, at *3. In its reasoning, the *Adamov* court noted that:

> whether or not the arbitration program is proper and/or effective[] are matters properly brought before the district judge in this case. The court reminds the parties that this is a discovery dispute, and the ultimate issue of the arbitration agreement is not before the undersigned. Because plaintiff has presented a colorable argument that the validity of the agreement will be at issue at the certification stage, discovery requests with respect to the arbitration program are proper.

26 *Id.*

---

28 [9] No. 2:13–cv–01222–TLN–AC, 2017 WL 6558133 (E.D. Cal. Dec. 22, 2017).

The Court agrees with the reasoning articulated in *Adamov* and finds that class contact information for at least some of the class members allegedly subject to the arbitration agreement is relevant. By communicating with putative class members, Plaintiffs will be able to gather information related to the enforceability of the arbitration agreement, which may be at issue during the certification stage. *See Adamov*, 2017 WL 6558133, at *4 ("To prevent this discovery would amount to a premature decision on the issue of the arbitration agreement's applicability, by limiting plaintiff's ability to include potentially-bound individuals in the class."). However, Plaintiff requests that the Court compel Defendants to identify and produce the contact information for all of the estimated 2,184 class members who are allegedly subject to the arbitration agreement without articulating why this production would be proportional to the needs of the case precertification. Nevertheless, the Court finds that a 20% sampling (437 class members) is proportional and will provide Plaintiff with a sufficient number of class members from which to gather information. Further, Defendants have made no arguments as to any burden imposed by such a sampling.

Accordingly, Plaintiff's Motion to Compel as to Interrogatory No. 7 propounded on Defendants Charter Inc. and Charter LLC and Interrogatory No. 5 propounded on Defendant TWC is **GRANTED in part and DENIED in part**. On or before **February 13, 2019**, Defendants shall randomly produce the names and last known contact information for 20% of the estimated 2,184 class members (437 class members) Defendants allege are subject to the arbitration agreement in the document produced by Defendants as CHARTER000297-298.

Additionally, the production shall be accompanied by a signed declaration stating how the random sample was selected. If the sample proves inadequate because of the inability to locate substantial numbers of former employees, the reluctance of significant numbers of current employees to speak to Plaintiff's counsel, or any other reason, Plaintiff may apply for additional relief after meeting and conferring with Defendants' counsel.

///

### C. Award of Fees

Plaintiff argues that she is entitled to $5,000 in costs and fees related to bringing her Motion to Compel. (ECF Nos. 49 at 11; 53 at 7.) Defendants argue that the Court should deny Plaintiff's request for fees even it grants her motion. (ECF No. 51 at 11.)

Federal Rule of Civil Procedure 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Here, the Court finds that no party is entitled to the costs incurred from making or opposing Plaintiff's Motion to Compel.

## III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel (ECF No. 49). Each party shall bear their own fees and expenses incurred from bringing this motion.

Additionally, to assure that the information provided to Plaintiff is protected against abuse, the Court finds that a limited protective order—to be complied with by the parties regarding the information to be disclosed—is appropriate.[10] Accordingly, the Court **FURTHER ORDERS**:

1. Before the class is certified, the contact information of potential class members shall be viewed solely by Plaintiffs' counsel, their investigators, and experts, and not by individual plaintiffs.
2. The information shall be used solely in this litigation and not for any other purpose without an order from the Court.

///

///

---

[10] Defendants state that providing Plaintiff with contact information for the putative class members would "cause[] disruption" and invade the privacy of the putative class members, but they do not otherwise support this position. (*See* ECF No. 51 at 2.) As Plaintiff points out in her reply, Defendants merely "mention privacy concerns in passing" and "do no explain why a protective order would not address" any privacy concerns. (ECF No. 53 at 4.)

3. Plaintiffs' counsel must inform each contacted individual that he or she has the right not to talk to counsel and, upon a declination, counsel will immediately terminate the conversation.

Dated: February 5, 2019

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge