1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8        SOUTHERN DISTRICT OF CALIFORNIA

9

10   JENNIFER M. SANSONE, and                      Case No.: 17-cv-1880-WQH-JLB
     BALDEMAR ORDUNO, Jr.,
11   Individually and on Behalf of Other           **ORDER**
     Members of the Public Similarly Situated,
12

13                                    Plaintiffs,

14   v.

15   CHARTER COMMUNICATIONS, INC.;
     TWC ADMINISTRATION LLC;
16   CHARTER COMMUNICATIONS, LLC;
     and DOES 1-25, inclusive,
17

18                                   Defendants.

19

20   HAYES, Judge:

21          The matter before the Court is the Motion for Partial Summary Judgment filed by

22   Defendants Charter Communications, Inc., TWC Administration LLC, and Charter

23   Communications, LLC (ECF No. 135).

24   **I.      BACKGROUND**

25          On December 6, 2017, Plaintiffs Jennifer M. Sansone and Baldemar Orduno, Jr.,

26   filed the First Amended Class Action Complaint against Defendants Charter

27   Communications, Inc. ("CCI"), TWC Administration LLC ("TWCA"), and Charter

28   Communications, LLC ("CCL"). (ECF No. 19). Plaintiffs allege that their employment

1

1   with TWCA was terminated when Time Warner Cable, Inc. ("TWCI") merged with

2   Legacy Charter Communications, Inc. ("L-CCI") and Plaintiffs subsequently began

3   working for CCL. Plaintiffs bring the following six causes of action against Defendants:

4   (1) violation of California Labor Code Section 227.3 for failure to pay vested vacation

5   wages at the time of termination; (2) violation of California Labor Code Section 227.3 for

6   reduction in the valuation of the vested vacation wages; (3) willful failure to timely pay

7   wages at termination in violation of California Labor Code Sections 201 and 203; (4)

8   breach of contract regarding base compensation; (5) breach of contract regarding

9   commissions; and (6) unfair competition.

10          On May 31, 2019, Defendants filed a Motion for Summary Judgment. (ECF No. 71).

11   Defendants contended that "Plaintiffs' claims under the California Labor Code fail as a

12   matter of law because Plaintiffs cannot prove that a termination or discharge [of Plaintiffs]

13   occurred in this case." (ECF No. 87 at 11). Plaintiffs contended that "a termination occurred

14   as a result of the transaction that closed May 18, 2016 and caused the permanent end of

15   Plaintiffs' employment with TWCA and the beginning of Plaintiffs' employment with a

16   distinct company, [CCL]," in December 2016. (*Id.*).

17          On September 18, 2019, the Court issued an Order granting summary judgment to

18   Defendants on all claims. (ECF No. 87). The Court stated that "[t]o prevail on claims

19   brought pursuant to § 227.3" for failure to pay vacation wages and devaluation of vacation

20   wages, "a plaintiff must prove that employment was terminated." (*Id.* at 12). Without

21   demonstrating a termination, Plaintiff was also not entitled to penalties for willful failure

22   to pay vacation wages under Section 203 (i.e. "waiting time penalties"). (*See id.* at 13). The

23   Court concluded that summary judgment was appropriate on the California Labor Code

24   claims because "Plaintiffs have not presented evidence to show that a termination occurred

25   in this case." (*Id.* at 18). On the same day, the Clerk of the Court entered Judgment in favor

26   of Defendants and against Plaintiffs. (ECF No. 88).

27          On October 1, 2019, Plaintiffs filed a Notice of Appeal as to the Court's Order

28   granting summary judgment and as to the Clerk's Judgment. (ECF No. 93). On January 5,

1   2021, the Court of Appeals issued a Mandate reversing the Court's grant of summary

2   judgment to Defendants on Plaintiffs' California Labor Code claims. (ECF No. 102). The

3   Court of Appeals stated:

> 4   The district court erred in granting summary judgment on Plaintiffs' claims
> 5   under California Labor Code § 227.3 for failure to pay vested vacation time
>     upon termination and for devaluation of their vacation time. Section 227.3
> 6   entitles an employee to "all vested vacation time remaining unused at
> 7   termination." *Boothby v. Atlas Mech., Inc.*, 8 Cal. Rptr. 2d 600, 601–02 (Ct.
>     App. 1992). The central issue here is whether Plaintiffs were terminated such
> 8   that TWCA was obligated to pay Plaintiffs their unused vested vacation time.
> 9   We conclude that Plaintiffs were terminated within the meaning of § 227.3.
>
> 10  In *Chapin v. Fairchild Camera & Instrument Corp.*, 107 Cal. Rptr. 111 (Ct.
> 11  App. 1973), the California Court of Appeal concluded that the defendant's
>     sale of the department in which the plaintiffs worked was a termination
> 12  entitling the employees to severance benefits, as the defendant's sale "made
> 13  it wholly impossible for the [plaintiffs] to continue their employment with [the
>     defendant]." *Id.* at 116. Similarly, TWCA "made it wholly impossible for
> 14  [Plaintiffs] to continue their employment with" TWCA by merging with CCI.
> 15  *Id.* Further, like severance pay is "a kind of accumulated compensation for
>     past services," *id.*, vacation pay is a "form of deferred compensation," *Suastez*
> 16  *v. Plastic Dress-Up Co.*, 647 P.2d 122, 125 (Cal. 1982). "It concerns the past,
> 17  not the future, and once it is earned, it becomes payable no matter what may
>     thereafter happen." *Chapin*, 107 Cal. Rptr. at 116. Thus, notwithstanding the
> 18  fact that Plaintiffs' vacation time was transferred to CCL, Plaintiffs were
> 19  entitled to payment of their unused vested vacation time when their
>     employment ended with TWCA in December 2016, absent an agreement to
> 20  the contrary. *See id.*; *see also* Cal. Div. of Lab. Standards Enf't, Enf't Policies
> 21  & Interpretations Manual § 15.1.11 (2002) (citing *Chapin* in its section on
>     vacation wages and explaining that California courts have held that "a sale of
> 22  the business constitutes a termination of the employment"). Therefore, the
> 23  district court improperly granted Defendants summary judgment on Plaintiffs'
>     § 227.3 claims.

24  (*Id.* at 3-5) (footnotes omitted). The Court of Appeals further held that "[b]ecause we

25  reverse the district court's grant of summary judgment on Plaintiffs' § 227.3 claims, we

26  also reverse summary judgment on the derivative claim[] for waiting time penalties . . . ."

27  (*Id.* at 5).

28

On January 3, 2022, Defendants filed a Partial Motion for Summary Judgment on the claim for waiting time penalties under Section 203 on the basis that Defendants' failure to pay vacation wages when Plaintiffs were terminated was not willful. (ECF No. 135). On January 24, 2022, Plaintiffs filed a Response in opposition to the motion. (ECF No. 136). On January 31, 2022, Defendants filed a Reply. (ECF No. 137).

## II.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.").

1    If the moving party meets the initial burden, the burden shifts to the opposing party

2    to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex*

3    *Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by

4    her own affidavits, or by the depositions, answers to interrogatories, and admissions on

5    file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*,

6    477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary

7    judgment merely by demonstrating "that there is some metaphysical doubt as to the

8    material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477

9    U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving

10   party's] position will be insufficient."). The nonmoving party's evidence is to be believed,

11   and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

12   **III.    CONTENTIONS**

13       Defendants seek partial summary judgment solely on Plaintiffs' claim for waiting

14   time penalties under California Labor Code Section 203. Defendants contend that a good

15   faith dispute as to whether the vacation wages at issue were due precludes a finding that

16   Defendants willfully failed to pay the vacation wages. Defendants contend that the

17   existence of a good faith dispute is demonstrated by legal uncertainty as to whether

18   Plaintiffs were terminated, as evidenced by: (1) language in the Court of Appeals decision

19   suggesting that the issue was one of first impression; (2) the decision of the Court of

20   Appeals to not issue a published opinion; (3) the absence of any case law directly on point

21   and the existence of authority in support of Defendants' position that no termination had

22   occurred; and (4) the purpose of California Labor Code Section 227.3.

23       Plaintiffs contend that there was no good faith dispute regarding termination because

24   "every source of authority—statutory text, judicial opinions, administrative guidance, and

25   secondary sources—confirmed a termination triggering vacation payout obligations

26   occurred." (ECF No. 136 at 15). Plaintiffs contend that the procedural circumstances of the

27

28

1  appeal suggest that the Court of Appeals did not consider the issue of termination legally

2  uncertain.[1] Plaintiffs contend that Defendants acted in bad faith.

3  **IV.    FACTS[2]**

4        As of May 2016, Plaintiffs Jennfer M. Sansone and Baldemar Orduno, Jr. were

5  employees of Defendant TWCA, a subsidiary of TWCI. On May 18, 2016, L-CCI and

6  TWCI completed a merger to form a new combined entity, CCI. As part of the merger,

7  TWCA became a subsidiary of CCI. After the close of the merger, Plaintiffs continued

8  working for TWCA with the same work location, compensation, and benefits. While

9  employed at TWCA, Plaintiffs accrued vacation time.

10        In the months following the completion of the merger, CCI took steps to integrate

11  L-CCI and TWCI's operations. In December 2016, Plaintiffs' employer changed from the

12  TWCA subsidiary of CCI to the CCL subsidiary of CCI as part of the post-merger

13  integration. Plaintiffs began receiving paystubs identifying CCL as their employer and

14  TWCA no longer had a California workforce. Plaintiffs were not given termination

15  paperwork or required to fill out new hire paperwork in their transition to CCL. TWCA did

16  not pay out Plaintiffs' accrued but unused vacation balances.

17

18

19  _____

20  [1] Plaintiffs further contend that "Defendants Motion should be denied based on the doctrines of law of the
21  case and rule of mandate." (ECF No. 136 at 12). This argument was already considered and ultimately
    rejected by this Court. (*See* ECF No. 121 (concluding that Defendants could seek summary judgment on
22  the willfulness issue because the issue did not fall within the Mandate of the Court of Appeals)).

23  [2] Plaintiffs request that the Court take judicial notice of five documents filed concurrently with their
24  Opposition to the Motion to Partial Summary Judgment. (ECF No. 136-4). Exhibit A contains TWCI's
    Certificate of Surrender of Right to Transact Intrastate Business. Exhibits B-E contain briefs in other cases
25  in which Defendants cited the California Division of Labor Standards Enforcement Manual. Judicial
    notice of the requested documents is denied, as the documents are unnecessary to this Order. Plaintiffs
26  also filed evidentiary objections. (ECF No. 136-5). The objections are overruled because there is no
    indication that the evidence could not be presented in an admissible form at trial. *See Fonseca v. Sysco
27  Food Servs. Of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (evidence is "admissible for summary
    judgment purposes [if it] 'could be presented in an admissible form at trial.'" (quoting *Fraser v. Goodale*,
28  342 F.3d 1032, 1037 (9th Cir. 2003))).

17-cv-1880-WQH-JLB

1   Plaintiffs' work location and job duties remained the same immediately after the

2   start of their employment at CCL. Plaintiffs were told that their vacation hours accrued

3   while working at TWCA were to be transferred to CCL. CCL considered Plaintiffs' service

4   time with TWCA for the purpose of calculating vacation accrual and several Plaintiffs used

5   vacation hours they had accrued while working at TWCA.

6   In January 2017, CCL implemented a new vacation policy. The policy required

7   advance approval by a supervisor before employees would be permitted to take paid

8   vacation time. The policy also reduced the rate at which accrued vacation hours would be

9   paid for some employees.

10  **V.   DISCUSSION**

11  California Labor Code Section 203 provides:

12
13      If an employer willfully fails to pay . . . any wages of an employee who is
        discharged or who quits, the wages of the employee shall continue as a penalty
        from the due date thereof at the same rate until paid or until an action therefor
14      is commenced; but the wages shall not continue for more than 30 days.

15  The California Code of Regulations defines the term "willful failure to pay" as follows:

16
17      A willful failure to pay wages within the meaning of Labor Code Section 203
        occurs when an employer intentionally fails to pay wages to an employee
        when those wages are due. However, a good faith dispute that any wages are
18      due will preclude imposition of waiting time penalties under Section 203.

19
20      (a) Good Faith Dispute. A "good faith dispute" that any wages are due occurs
        when an employer presents a defense, based in law or fact which, if successful,
21      would preclude any recovery on the part of the employee. The fact that a
        defense is ultimately unsuccessful will not preclude a finding that a good faith
22      dispute did exist. Defenses presented which, under all the circumstances, are
        unsupported by any evidence, are unreasonable, or are presented in bad faith,
23      will preclude a finding of a "good faith dispute."

24
25  8 Cal. Code Regs. § 13520; *see also Hill v. Walmart Inc.*, No. 21-15180, 2022 WL

26  1218776, at *4 (9th Cir. Apr. 26, 2022) ("An important rationale behind allowing a good

27  faith defense in this context is to prevent employers from being penalized in genuine cases

28  of uncertainty." (quotations omitted)); *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th

859, 868 (2018) ("[A]n employer's failure to pay is not willful if that failure is due to [ ] uncertainty in the law . . . ."). The existence of a good faith dispute is determined by an objective standard. *See Diaz*, 23 Cal. App. 5th at 874.

Defendants' legal position—that no termination of Plaintiffs had occurred—would have precluded any recovery by Plaintiffs on their California Labor Code claims. The Court must determine whether Defendants position was asserted in good faith. *Cf. Hill*, 2022 WL 1218776, at *4 ("[T]he operative question is simply whether, based on the state of the law when Hill's photo shoots occurred, Walmart has presented an objectively reasonable defense that is not marred by bad-faith conduct.").

California Labor Code Section 227.3 provides:

> [W]henever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served.

While the statute requires payment of vacation wages at termination, the statute does not define "termination" or otherwise identify when a termination occurs.

In concluding that a termination had occurred in this case, the Court of Appeals relied on three authorities. The first, *Chapin v. Fairchild Camera & Instrument Corp.*, 31 Cal. App. 3d 192 (1973), is a California Court of Appeal decision holding that former employees of a company were entitled to contractual severance benefits due at "involuntary termination" when the division of the company they worked for was sold. *Id.* at 198. Under those circumstances, the court held that "[t]here can be no question" that the sale of the division "involved a permanent release of the [e]mployees" by their former employer. *Id.* at 198. The second authority cited by the Court of Appeals, *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774 (1982), establishes that vacation pay (at issue in this case) and severance benefits (at issue in *Chapin*) are both forms of deferred compensation due at termination. The remaining authority cited by the Court of Appeals reiterates the holding in *Chapin* that "a sale of the business constitutes a termination of the employment . . . ."

8

1  Cal. Div. of Lab. Standards Enf't, Enf't Policies & Interpretations Manual ("DLSE
2  Manual") § 15.1.11 (2002).

3       The facts presented by the parties show that as of May 2016, Plaintiffs worked and
4  accrued vacation time as employees of Defendant TWCA, a subsidiary of TWCI. TWCA
5  became a subsidiary of CCI on May 18, 2016, when L-CCI and TWCI completed a merger.
6  The Court of Appeals held that Plaintiffs' "employment ended with TWCA in December
7  2016"—when Plaintiffs' employer changed from the TWCA subsidiary of CCI to the CCL
8  subsidiary of CCI as part of the post-merger integration. (ECF No. 102 at 4). Plaintiffs
9  began receiving paystubs identifying CCL as their employer. However, Plaintiffs were not
10  given termination paperwork or required to fill out new hire paperwork in their transition
11  to CCL and Plaintiffs' work location and job duties remained the same immediately after
12  the start of their employment at CCL. TWCA did not pay out Plaintiffs' accrued but unused
13  vacation balances—Plaintiffs were instead told that their vacation hours accrued while
14  working at TWCA were to be transferred to CCL. CCL considered Plaintiffs' service time
15  with TWCA for the purpose of calculating vacation accrual and several Plaintiffs used
16  vacation hours they had accrued while working at TWCA.

17       The authorities cited by the Court of Appeals make clear that the sale of a business
18  triggers a termination but do not address whether a termination occurs when employees
19  move between related corporate entities following a merger. The Court of Appeals
20  explicitly recognized that "the California Supreme Court has not decided whether
21  employees are effectively terminated when transferred to a new employer following a
22  merger." (*Id.*). Other cases cited by Plaintiffs do not clarify whether a termination results
23  from a post-merger transfer. *See Gaspar v. United Milk Producers of Cal.*, 62 Cal. App. 2d
24  546, 553 (1944) ("No California case which we have found announces a rule contrary to
25  the rule generally recognized that where an employer puts out of his power the further
26  performance of an employment contract by selling his entire business it operates as a
27  discharge of his employee engaged in such business."); *Andresen v. Int'l Paper Co.*, No.
28  cv 13-2079 CAS (AJWx), 2013 WL 4013120, at *4 (C. D. Cal. Aug. 5, 2013) ("Under

1   California law, the sale of a business acts as a termination of the employee's employment

2   with her employer, even if the employee continues working in the same capacity at the new

3   employer.").

4          Defendants primarily rely on three cases in support of their position that there was a

5   good faith dispute on the termination issue. The first two, *Farris v. Int'l Paper Co.*, No.

6   13-cv-485-CAS (SPx), 2014 WL 4258722 (Aug. 26, 2014), and *Andresen*, 2013 WL

7   4013120, address the inapposite issue of whether a purchaser company in an acquisition

8   must, as a successor, pay out benefits accrued by employees during their former

9   employment at the acquired company prior to the acquisition when the purchaser company

10  later discharges those employees. *See, e.g., Farris*, 2014 WL 4258722, at* 3 ("However,

11  neither *Chapin* nor section 2920 applies to the present case, where plaintiff seeks to hold

12  defendant liable for accrued vacation pay on the grounds that it is a successor to TIN and

13  Crockett."). However, the third case, *Elias v. Superior Court*, No. G50404, 2015 WL

14  1455910 (Cal. Ct. App. Mar. 30, 2015), holds that an employee's moves between a parent

15  company and a subsidiary represent a "single, continuous employment relationship" rather

16  than a termination that would trigger Section 227.3. *Elias*, 2015 WL 1455910, at *7. The

17  Court of Appeals concluded that "in analyzing whether Plaintiffs were terminated, this

18  court cannot rely on [*Elias*], as it is non-precedential." (ECF No. 102 at 5 n.2). However,

19  *Elias* remains relevant to determining whether Defendants disputed Plaintiffs' termination

20  in good faith, particularly because the Court of Appeals has endorsed consideration of

21  unpublished state court opinions in the past. *See, e.g., Loftis v. Almager*, 704 F.3d 645, 651

22  (9th Cir. 2012) (citing two unpublished California Court of Appeal opinions); *Roberts v.

23  McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011) ("Even though unpublished

24  California Courts of Appeal decisions have no precedential value under California law, the

25  Ninth Circuit is 'not precluded' from considering such decisions 'as a possible reflection

26  of California law.'" (quotations omitted)); *Employers Ins. Of Wausau v. Granite State Ins.

27  Co.*, 330 F.3d 1214, 1220 n.8 (2003) ("Granite correctly notes that we may consider

28  unpublished state decisions, even though such opinions have no precedential value. We

1    agree with Granite that *Alpha Therapeutic,* while certainly not dispositive of how the

2    California Supreme Court would rule, lends support to Granite's contention that *Stonewall*

3    accurately represents California law.).[3]

4          In the absence of existing precedential authority governing whether an employee's

5    move between related subsidiaries following a merger constitutes a termination, the Court

6    of Appeals was required to decide the issue as a matter of first impression. While the Court

7    of Appeals ultimately determined that a termination occurred, this Court concludes that

8    Defendants' legal position was not "unsupported by any evidence" or "unreasonable." 8

9    Cal. Code Regs. § 13520(a); *See Hill*, 2022 WL 1218776, at *10 (affirming that a defendant

10   raised a good faith dispute because although existing caselaw "cast doubt on the strength

11   of [the defendant's] defense, they are not similar or . . . authoritative enough to render that

12   defense unreasonable").

13         Evidence that a defense is "presented in bad faith" precludes a finding of a good

14   faith dispute. 8 Cal. Code Regs. § 13520; *See Hill*, 2022 WL 1218776, at *5. This inquiry

15   "does not render the test a subjective one, but indicates that subjective bad faith may be of

16   evidentiary value in the objective bad faith analysis." *Id.* (quotation omitted). "Unless there

17   is evidence of subjective bad faith, it is beside the point that [a defendant] may have only

18   formulated its [legal] arguments during litigation." *Id.* (quotations omitted).

19         Plaintiffs contend that Defendants acted in bad faith because Defendants' conduct is

20   "wholly inconsistent" with Defendants' position that Plaintiffs were not terminated. (ECF

21   No. 136 at 27). Specifically, Plaintiffs contend that "the evidence shows CCL did not

22   consider itself bound to honor TWCA's obligations or promises" and instead "viewed itself

23   as a new employer who could implement its own vacation policy with different

24

25   ───────────────────

26   [3] The existence of the Court's prior Order that was reversed by the Court of Appeals is not a relevant factor in determining whether a good faith dispute existed. The Court similarly declines to read any meaning into the procedural choices of the Court of Appeals absent an express instruction to do so. The remaining sources presented by the parties as authorities—namely, legal articles and blog posts—are largely inapposite to the precise factual scenario at issue and carry little weight in determining the state of the law.

27

28

1    computation methods that it retroactively applied to Plaintiffs' illicitly 'transferred'

2    vacation banks." (*Id.*). "By unilaterally 'transferring' Plaintiffs' vacation banks to CCL's

3    books and then applying the computation aspect of CCL's vacation plan which lowered

4    the value of Plaintiffs' vacation banks, Defendants reaped a windfall and Plaintiffs lost a

5    significant amount of vacation wages," which "could not have happened had TWCA paid

6    out vacation at termination as § 227.3 required." (*Id.*).

7         The facts presented by the parties demonstrate that (1) Plaintiffs were not given

8    termination paperwork or required to fill out new hire paperwork in their transition to CCL;

9    (2) Plaintiffs' work location and job duties remained the same immediately after the start

10   of their employment at CCL; (2) Defendants represented to Plaintiffs that Plaintiffs'

11   vacation hours accrued while working at TWCA were to be transferred to CCL; (3) CCL

12   considered Plaintiffs' service time with TWCA for the purpose of calculating vacation

13   accrual; and (4) several Plaintiffs used vacation hours at CCL that they had accrued while

14   previously working at TWCA. These actions are all consistent with the position that no

15   termination had occurred. There is no evidence linking CCL's January 2017

16   implementation of a vacation policy that resulted in a reduction of the pay rate for accrued

17   vacation hours for some employees (but not others) to TWCA's failure to pay out vacation

18   wages. Under these circumstances, Plaintiffs' assertion that the implementation of the new

19   vacation policy demonstrates that CCL considered itself a new employer or intended to

20   knowingly circumvent Defendants' obligations to Plaintiffs amounts to speculation

21   insufficient to defeat summary judgment. *See Hill*, 2022 WL 1218776, at *5 ("In a cursory

22   attempt to show bad faith, Hill says that Walmart's contract with Scout evinces 'subterfuge'

23   because it declares Scout's personnel to be independent contractors while also allowing

24   Walmart significant control over Hill's work. However, she cites no authority suggesting it

25   is improper to include standard language in a contract stating that neither party views the

26   other's personnel as its employees, nor does she cite any evidence that Walmart included

27   this provision while (for instance) privately believing Hill was an employee. At best, Hill's

28

1  argument amounts to mere speculation that Walmart was acting in bad faith, which is

2  insufficient to defeat summary judgment.").

3       The Court concludes that Defendants have carried their burden at summary

4  judgment to establish that there was a good faith dispute as to whether a termination

5  occurred. Defendants are entitled to partial summary judgment on the California Labor

6  Code Section 203 waiting time penalties claim because Defendants' failure to pay

7  Plaintiffs' accrued vacation wages at the time of the termination was not willful.

8  **VI.    CONCLUSION**

9       IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment filed by

10  Defendants Charter Communications, Inc., TWC Administration LLC, and Charter

11  Communications, LLC (ECF No. 135) is granted.

12  Dated:  May 10, 2022

13                                                    Hon. William Q. Hayes
                                                      United States District Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17-cv-1880-WQH-JLB